UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN TU,<br><br>Plaintiff,<br><br>v.<br><br>C.H. ROBINSON WORLDWIDE, INC.,<br><br>Defendant. | Civil Action No. 2:19-cv-16561 (JMV)<br>(JAD)<br><br><br>OPINION |

**JOSEPH A. DICKSON, U.S.M.J.**

      This matter comes before the Court by way of the motion to compel arbitration or, in the alternative, to transfer venue or dismiss the claims as compulsory counterclaims, filed by Defendant C.H. Robinson Worldwide, Inc. ("C.H. Robinson"). (ECF No. 7). Plaintiff Steven Tu ("Mr. Tu") filed a brief in opposition, (ECF No. 10), to which C.H. Robinson replied.[1] (ECF No. 11). The Court carefully considered the parties' submissions, but pursuant to Federal Rule of Civil Procedure 78(b), did not hear oral argument. For the reasons stated below, and for good cause shown, C.H. Robinson's motion to transfer venue is **GRANTED** and this case shall be transferred to the United States District Court for the District of Minnesota.

**I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

      Mr. Tu is a New Jersey resident and former employee of C.H. Robinson, a company headquartered in Minnesota. (Compl. ¶¶ 3, 4, ECF No. 1). Mr. Tu worked out of C.H. Robinson's

---

[1] The Court will refer to C.H. Robinson's moving brief as "Def.'s Br.," (ECF No. 7-1); to Mr. Tu's opposition brief as "Pl.'s Opp'n Br.," (ECF No. 10); and to C.H. Robinson's reply as "Def.'s Reply," (ECF No. 11).

Cranford, New Jersey office from 2012 until May of 2018 when C.H. Robinson terminated his employment. (Id. ¶¶ 16, 17). On August 12, 2019, Mr. Tu filed the Complaint in this action asserting claims against C.H. Robinson under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, et seq. for unpaid wages and overtime compensation. (See generally Compl., ECF No. 1). Specifically, Mr. Tu alleges that C.H. Robinson misclassified him as an exempt employee and did not compensate him for the frequent overtime he worked. (Id. ¶¶ 30-33). He also alleges that C.H. Robinson improperly and unjustifiably reduced his salary, though he continued to perform the same job functions. (Id. ¶¶ 26-29).

In lieu of answering the Complaint, C.H. Robinson filed the present motion to compel arbitration or, in the alternative, to transfer venue or dismiss Mr. Tu's claims as compulsory counterclaims. Integral to C.H. Robinson's motion is the existence of a Management-Employee Agreement that Mr. Tu signed and entered into with C.H. Robinson on December 3, 2013. (Def.'s Br. at 2, ECF No. 7-1; Ex. 1, Def.'s Br., ECF No. 7-3). C.H. Robinson attached a copy of the Agreement to its motion and represents that it governs the terms of the parties' employment and post-employment relationship. (Def.'s Br. at 2, ECF No. 7-1; Ex. 1, Def.'s Br., ECF No. 7-3). The Agreement contains both an arbitration provision and a forum-selection clause that limit how and where Mr. Tu may bring claims against C.H. Robinson. (Ex. 1 §§ 10.01, 11.01, ECF No. 7-3). The arbitration provision states, in relevant part:

> [A]ll Claims the Employer might bring against Key Employee and all Claims Key Employee might bring against CHRW and/or any officers, directors, employees, or agents of CHRW shall be deemed waived unless submitted to mediation, and thereafter, if mediation is unsuccessful, to final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association.

(Id. § 10.01). "Claims" includes all claims related to Mr. Tu's employment, compensation, benefits, and the FLSA. (Id. § 10.02). Under the forum-selection clause, the parties agree to construe the Management-Employee Agreement in accordance with Minnesota law and agree to adjudicate or arbitrate exclusively in the State of Minnesota, Hennepin County District Court, or the United States District Court for the District of Minnesota. (Id. § 11.01).

Mr. Tu filed an opposition to C.H. Robinson's motion arguing, among other things, that arbitration in inappropriate and that the District of Minnesota is not the proper venue in which to adjudicate this dispute. (See generally Pl.'s Opp'n Br., ECF No. 10). Mr. Tu does not argue that the Management-Employee Agreement or its provisions are invalid or unenforceable. (See generally id.).

The above-captioned case is not the only pending matter between the parties. Two months prior to Mr. Tu filing his Complaint in the present action, C.H. Robinson filed a Complaint against Mr. Tu in the United States District Court for the District of Minnesota (the "Minnesota action"). (See Ex. 2, Def.'s Br., ECF No. 7-4). C.H. Robinson's First Amended Complaint in that case alleges that Mr. Tu committed various unlawful actions under Minnesota law and in violation of the parties' Management-Employee Agreement. (See id.; Ex. 1, Def.'s Br., ECF No. 7-3). For example, C.H. Robinson alleges that Mr. Tu started a competing company and solicited and hired two C.H. Robinson employees. (Ex. 2 ¶¶ 58, 72-73, Def.'s Br., ECF No. 7-4).

On July 9, 2019, Mr. Tu filed a motion in the Minnesota action to dismiss the case or, in the alternative, transfer venue to the United States District Court for the District of New Jersey. (Wang Decl. ¶ 3, Pl.'s Opp'n Br., ECF No. 10-2). By way of Report and Recommendation dated December 20, 2019, the Honorable Becky R. Thorson, U.S.M.J. recommended to the District Court of Minnesota that Mr. Tu's motion be denied in its entirety. (See Report and

Recommendation, Def.'s Reply, ECF No. 11-1). Similar to Mr. Tu's arguments in opposition to the present motion, Mr. Tu did not argue before Judge Thorson that the forum-selection clause was unenforceable or invalid. (Id. at 7). Consequently, Judge Thorson treated the forum-selection clause as a valid, contractually agreed upon provision under which Mr. Tu had expressly agreed to (1) adjudicate or arbitrate any claim or dispute between the parties exclusively in the State of Minnesota, Hennepin County District Court, or the United States District Court for the District of Minnesota and (2) waive any objection that such venue was inconvenient or improper. (See id. at 5, 11-13). By way of Order dated January 7, 2020, the Honorable Michael J. Davis, U.S.D.J. adopted Judge Thorson's Report and Recommendation and denied Mr. Tu's motion to dismiss or transfer venue. C.H. Robinson Worldwide, Inc. v. Tue, No. 19-1444 (MJD) (BRT), 2020 WL 85183, at *1 (D. Minn. Jan. 7, 2020).

## II. LEGAL STANDARD

C.H. Robinson's motion seeks alternative forms of relief in the form of an Order compelling arbitration or dismissing Mr. Tu's claims as compulsory counterclaims to the Minnesota action, but the Court need only address the request to transfer venue pursuant to the Management-Employee Agreement's forum-selection clause.

28 U.S.C. § 1404(a) governs a motion to transfer venue. Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of this statute is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). Therefore, the Court must, as a preliminary

matter, consider whether venue is proper in the proposed forum. Manopla v. Raymours Furniture Co., Inc., No. 17-7649 (BRM) (LHG), 2018 WL 3201800, at *2 (D.N.J. June 29, 2018); 28 U.S.C. § 1404(a).

If venue would be proper in that forum, the Court must then consider whether the three factors expressly enumerated in § 1404(a) favor transfer: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Wm. H. McGee & Co., v. United Arab Shipping Co., 6 F. Supp. 2d 283, 288 (D.N.J. 1997). The United States Court of Appeals for the Third Circuit has clarified that the transfer analysis should not be limited to those three factors; rather, courts should consider "'all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 519 (D.N.J. 1998) (quoting Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)). To that end, the Third Circuit has established a list of private and public interest factors that District Courts must evaluate when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara, 55 F.3d at 879-80.

"Within this framework, courts should place great weight on valid forum-selection clauses." Park Inn Int'l, LLC v. Mody Enters., Inc., 105 F. Supp. 2d 370, 377 (D.N.J. 2000) Indeed, the existence of a valid forum-selection clause alters the Court's transfer analysis in several ways. First, "[w]hile a valid forum-selection clause is not dispositive, 'it is entitled to substantial consideration.'" Id. (quoting Jumara, 55 F.3d at 880). "A forum-selection clause is considered presumptively valid and enforceable unless the party objecting to its enforcement makes a strong showing of unreasonableness." Manopla, 2018 WL 3201800, at *2 (citing Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000)).

Second, the United States Supreme Court has instructed that "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 571 U.S. 49, 64 (2013). Instead, a court may only consider the parties' arguments as to the public-interest factors and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." Id.

Lastly, the moving party generally bears the burden of establishing that transfer is appropriate and that the proposed forum is more convenient than the present forum. Santi v. Nat'l Bus. Records Mgmt., LLC, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (citing Jumara, 55 F.3d at 879). But where there is a valid forum-selection clause, "the plaintiff bears the burden of 'demonstrating why they should not be bound by their contractual choice of forum.'" Manopla, 2018 WL 3201800, at *2 (quoting Park Inn Int'l, LLC, 105 F. Supp. 2d at 377).

### III. DISCUSSION

#### A. The Forum-Selection Clause is Valid and Enforceable

C.H. Robinson and Mr. Tu entered into a Management-Employee Agreement that includes a presumptively valid and enforceable forum-selection clause. Under that clause, the parties contractually agreed to adjudicate or arbitrate exclusively in the State of Minnesota, Hennepin County District Court, or the United States District Court for the District of Minnesota, and Mr. Tu expressly agreed to waive any objection that such venue was inconvenient or improper. (Ex. 1 §§ 11.01, 11.02, ECF No. 7-3). Mr. Tu has not argued in the present case, nor did he argue in the case pending in the District of Minnesota, that the Agreement or the forum-selection clause are invalid or unenforceable. (See generally, Pl.'s Opp'n Br. at ECF No.10; Report and Recommendation at 7, Def.'s Reply, ECF No. 11). Thus, the Court finds no reason to construe the forum-selection clause as anything other than a valid and enforceable provision. Manopla, 2018 WL 3201800, at *2 (citing Cadapult Graphic Sys., Inc., 98 F. Supp. 2d at 564) ("A forum-selection clause is considered presumptively valid and enforceable unless the party objecting to its enforcement makes a strong showing of unreasonableness.").

## B. Venue is Proper in the United States District Court for the District of Minnesota

Aside from the parties' agreement under the forum-selection clause to the jurisdiction of the United States District Court for the District of Minnesota, venue is also proper in that District under 28 U.S.C. § 1391, the statute governing venue in the United States District Court.

Pursuant to 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district court is located." 28 U.S.C. § 1391(b)(1). For venue purposes, an entity "shall be deemed to reside, if a defendant, in any district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Id. at § 1391(c). Both parties represent that C.H. Robinson maintains its principal place of business in Minnesota, which is naturally within the

7

District of Minnesota. (Compl. ¶ 4, ECF No. 1; Def.'s Br. at 12, ECF No. 7-1). C.H. Robinson was, therefore, subject to personal jurisdiction in the District of Minnesota at the time Mr. Tu filed this action and, consequently, resided in that District for venue purposes. Accordingly, the Court may transfer this case to the District of Minnesota pursuant to 28 U.S.C. § 1404(a) if the transfer would otherwise be appropriate.

### C. The Public Interest Factors Disfavoring Transfer Do Not Outweigh the Parties' Choice of Forum

The Court must next balance the public interest factors relevant to C.H. Robinson's transfer motion. As discussed above, such public interest factors include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80. The Court will assume, at the instruction of the United States Supreme Court, that the parties' private interests "weigh entirely in favor of the preselected forum." Atl. Marine Constr. Co., 571 U.S. at 64. Accordingly, the Court need not address the private interest factors. Id. The Court reiterates that Mr. Tu, as the party seeking to avoid the forum-selection clause, "has the burden of establishing that public interests disfavoring the transfer outweigh the parties' choice [of forum]." Manopla, 2018 WL 3201800, at *2 (citing Atl. Marine Constr. Co., 571 U.S. at 63-64).

#### 1. Enforceability of the Judgment

This factor is neutral, as a judgment rendered in either this District or the District of Minnesota could easily be registered and then enforced in another district.

#### 2. Practical Considerations Regarding Trial

Practical considerations are relevant in that they "could make the trial easy, expeditious, or inexpensive," and this is particularly true if transferring the case would result in it being in "another jurisdiction where a related matter is pending." LG Elecs., Inc. v. First Int'l Comput., Inc., 138 F. Supp. 2d 574, 592 (D.N.J. 2001).

C.H. Robinson argues that this factor weighs in favor of transfer because it already has a pending action against Mr. Tu in the District of Minnesota. (Def.'s Br. at 13, ECF No. 7-1). C.H. Robinson further argues that if this matter is not arbitrated, it could and should be consolidated with the Minnesota action. (Id.). Mr. Tu does not specifically address this factor, but based on sentiments expressed in his opposition brief and that he filed a motion to dismiss or transfer venue in the Minnesota action, the Court gleans that he is dissatisfied with litigating either case in the District of Minnesota. (See Pl.'s Opp'n Br. at 11, ECF No. 10).

The Court recognizes that there may be overlap between this case and the Minnesota action, but the cases are distinct. In the Minnesota action, C.H. Robinson alleges Mr. Tu violated Minnesota law and the Management-Employee Agreement by, among other things, starting a competing business. In the present action, Mr. Tu alleges that C.H. Robinson violated the FLSA and the NJWHL by failing to pay him overtime and by reducing his salary without notice. While C.H. Robinson has argued that Mr. Tu's allegations are subject to the Management-Employee Agreement's arbitration provision or, in the alternative, are compulsory counterclaims to the Minnesota action, the Court has already concluded that it need not reach the merits of those arguments for the purposes of this motion. The Court finds that this factor is, therefore, neutral to the transfer analysis.

3. **Relative Administrative Difficulty**

Regarding the administrative difficulties associated with proceeding in either District, the Court is required to evaluate this factor in light of the relative docket congestion of the fora. Jumara, 55 F.3d at 879. The Court recognizes that both Districts are extremely busy. However, the Administrative Office of the Courts published statistics declaring six judicial emergencies within the District of New Jersey as of June 26, 2020. See U.S. Courts, Judicial Emergencies, available at https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies. Out of seventeen judgeships, six remain vacant. Id. The Court finds that this factor weighs in favor of transfer.

### 4. Local Interest / Public Policies of the Fora

The Court next considers "the local interest in deciding local controversies at home." Jumara, 55 F.3d at 879. While C.H. Robinson contends that "[n]o evidence suggests . . . either forum has overriding local interests or public policies," (Def.'s Br. at 13, ECF No. 7-1), Mr. Tu argues that this District has a strong interest in adjudicating a New Jersey resident's claims under the New Jersey Wage and Hour Law. (Pl.'s Opp'n Br. at 9, ECF No. 10). Moreover, Mr. Tu worked out of C.H. Robinson's New Jersey office and C.H. Robinson's alleged failure to pay Mr. Tu overtime compensation occurred in New Jersey. New Jersey, therefore, has an interest in the disposition of this case. See Newhall v. Chase Home Fin. LLC, No.10-2749 (WJM) (MF), 2010 WL 4387517, at *5 (D.N.J. Oct. 28, 2010) (finding that Florida had an interest in the disposition of a case where plaintiff worked in Florida, the failure to pay plaintiff overtime occurred in Florida, and records, documents, and witnesses concerning the nature of his work were located in Florida). The Court finds this factor weighs against transfer.

### 5. Judges' Familiarity With Applicable State Law

This factor focuses on whether judges in one of the districts would have greater familiarity with the applicable state law, particularly in diversity cases. Jumara, 55 F.3d at 879. Mr. Tu's

claims sound in both federal law (FLSA claims) and New Jersey state law (NJWHL claims). (Compl. ¶¶ 34-57, ECF No. 1). Mr. Tu argues only that "the District of New Jersey would be significantly more familiar with the applicable law as compared to the District of Minnesota." (Pl.'s Opp'n Br. at 9, ECF No. 10). Common sense suggests that a New Jersey court would be better suited to address Mr. Tu's NJWHL claims, but this assumption is not necessarily true here. For instance, one of Mr. Tu's state law claims is that C.H. Robinson failed to pay him overtime compensation in violation of N.J.S.A. 34:11-56a4. (Compl. ¶¶ 44-45, ECF No. 1). The United States Court of Appeals for the Third Circuit has observed that "[t]he language of New Jersey Wage and Hour Law § 34:11–56a4 is substantially similar to the FLSA." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 n.5 (3d Cir. 2014); see also Casco v. Ponzios RD, Inc., No. 16-2084 (RBK) (JS), 2019 WL 1650084, at *7 (D.N.J. Apr. 17, 2019) ("[T]he FLSA and the NJWHL are interpreted in parallel because the NJWHL is patterned on the FLSA."). In this regard, the Court finds that the District of Minnesota, while less familiar with New Jersey law, is just as equipped to understand and apply the NJWHL as it is the FLSA. This factor, therefore, is neutral in the Court's transfer analysis.

The Court has carefully considered each of the public interest factors discussed above. Three of those factors are essentially neutral to the transfer analysis. One factor weighs in favor of transfer (relative administrative difficulty), and one weighs against it (local interest/public polices of the fora). The single factor weighing against transfer cannot and does not outweigh the substantial consideration afforded to the valid forum-selection clause in this action. Jumara, 55 F.3d at 880. The Court finds that Mr. Tu has failed to meet his burden of showing that such "extraordinary circumstances" exist to justify transfer to this District, in direct contravention to the

parties' contractually-agreed upon forum-selection clause. Atl. Marine Constr. Co., 571 U.S. at 62. Accordingly, the Court will grant C.H. Robinson's motion to transfer.

## IV.  CONCLUSION

For the reasons set forth above, C.H. Robinson's motion to transfer, (ECF No. 7), is **GRANTED**, and this matter shall be transferred to the United States District Court for the District of Minnesota.  An appropriate form of Order accompanies this Opinion.

 s/ Joseph A. Dickson
**JOSEPH A. DICKSON, U.S.M.J.**

Date:   June 29, 2020

cc:   Honorable John M. Vazquez, U.S.D.J.